IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **TIA GEDEUS,**<br><br>*Plaintiff,*<br><br>v.<br><br>**ST. IGNATIUS NURSING HOME,**<br><br>*Defendant.* | Case No. 2:21-cv-03783-JDW |

### **MEMORANDUM**

In the fall of 2019, Plaintiff Tia Gedeus's world was turned upside down. Newly pregnant, Ms. Gedeus also learned that she was suffering from a serious form of cancer. Ms. Gedeus went out on medical leave for about four weeks. During that time, her employer, St. Ignatius Nursing Home, had difficulty reaching her, and work started to pile-up. Unsure whether and when Ms. Gedeus might return to work, St. Ignatius decided to hire someone else to fill her role and terminated Ms. Gedeus. While that termination did not fun afoul of the Family and Medical Leave Act because St. Ignatius did not terminate Ms. Gedeus to interfere with any future FMLA rights, a jury must determine whether St. Ignatius's actions violated other federal and state anti-discrimination laws.

**I.      BACKGROUND**

On November 26, 2018, St. Ignatius Nursing Home hired Tia Gedeus as its Director of Social Services ("DSS"). Rather than provide medical care or treatment, the DSS

addresses residents' social and emotional needs and coordinates with other departments and service providers as necessary. The DSS takes part in daily meetings each morning with other department heads to address the needs of St. Ignatius's residents. When new residents come to St. Ignatius, the DSS meets with them and works with them and their families to establish a plan of care and discharge plans. The DSS also addresses families' questions and concerns and handles any emergencies that may arise.

In addition to being responsible for certain administrative tasks, Ms. Gedeus was one of two social workers who were responsible for a caseload of residents at St. Ignatius. The other social worker, Lee Stewart, was less experienced and reported to Ms. Gedeus. Both he and Ms. Gedeus performed regular assessments of the residents and submitted those assessments to various regulatory agencies. St. Ignatius does not receive payment for the residents' stay unless someone performs and submits the assessments. Though assessments had to be done in person, Ms. Gedeus could submit them electronically, and she would sometimes do so from home in the evenings or on the weekends.

In July 2019, Ms. Gedeus learned that she was pregnant. She disclosed her pregnancy to her supervisor, Leah Killian-Smith, and to St. Ignatius's President and CEO, Susan McCrary, in August 2019. She then began to experience health issues, and her doctors suspected that she had a serious form of cancer. On September 27, 2019, Ms. Gedeus advised Ms. Killian-Smith that she likely had cancer and would need to undergo chemotherapy to treat it once her doctors could confirm the diagnosis. During that

discussion, Ms. Gedeus raised the possibility of working from home a few days a week, anticipating that she would need to do so once she started chemotherapy. Ms. Gedeus did not seek to start working from home at that point in time. Instead, she was "just trying to put [her] ducks in a row." (ECF No. 19-3 at 144:18-19.) That day ended-up being Ms. Gedeus's last day in the office, and there were no further discussions about the possibility of Ms. Gedeus working from home.

Doctors then admitted Ms. Gedeus to the hospital and started treating her for Hodgkin's lymphoma. Over the weeks that followed, Ms. Gedeus used paid time off ("PTO") to cover her medical leave. Though she was out on leave, Ms. Gedeus contends that she worked remotely on a "near daily basis." (*Id.* at 291:13-17.) Mr. Stewart also testified that Ms. Gedeus was texting with him and performing work-related tasks while she was out on leave in October 2019.

During that same time period, Scot Weirich, the Director of Human Resources at St. Ignatius, tried to contact Ms. Gedeus several times to ascertain her health status and whether and when she might return to work. Mr. Weirich was never able to get in touch with her. While Ms. Gedeus was out on leave, work began to pile-up, and Mr. Stewart became overwhelmed. To address this issue, St. Ignatius started searching for an interim DSS to fill Ms. Gedeus's position on a temporary basis. However, once Mr. Weirich found a qualified candidate, Juliette May, Ms. May explained that she would only take the position if it was permanent. At this point in time, Mr. Weirich had not heard back from

Ms. Gedeus about her health status or whether and when she may be able to return to work. However, on October 30, 2019, he spoke with Ms. Gedeus's mother, and she advised him that Ms. Gedeus was still in the hospital. Ms. Gedeus's mother also inquired about how much PTO remained. Following that conversation, Mr. Weirich recommended that St. Ignatius hire Ms. May on a permanent basis, which meant terminating Ms. Gedeus. When speaking with Ms. Gedeus's mother, Mr. Weirich did not reveal that her daughter's job might be in jeopardy. That same day, Ms. McCrary, Ms. Killian-Smith, and Mr. Weirich reached an agreement to offer Ms. May the position of DSS. Mr. Weirich sent her an offer letter on October 31, 2019, and she was scheduled to start work on November 18, 2019. However, for reasons that the record does not reveal, St. Ignatius did not inform Ms. Gedeus of its decision to replace her with Ms. May at that time.

> On November 5, 2019, Ms. Gedeus sent the following email to Mr. Weirich:
>
> I know you and I have been missing each other via phone so I wanted to follow up through an email. At the moment I have not been released by my doctor to return to work. Prior to my cancer diagnosis Leah and myself discussed me working a few days from home and then a few days in the office, however my health has not allowed for that as of yet.
>
> I wanted to know once I have exhausted all of my vacation time, what benefits will I be entitled to and will [sic] receive my FMLA as of 11-26-19?

(ECF No. 19-15.) Three days later, Mr. Weirich sent a letter to Ms. Gedeus via email, advising her that St. Ignatius could not hold her position for her and had hired someone to replace her as DSS. The letter also advised Ms. Gedeus that her termination would take effect as of November 11, 2019. Ms. Gedeus claims that if St. Ignatius had told her that it

4

was going to terminate her if she did not come back to the office, then she would have consulted with her doctor and forced herself to work in the office, despite her illness, because she was in desperate need of health insurance, given her pregnancy and cancer diagnosis.

On August 25, 2021, Ms. Gedeus brought suit against St. Ignatius, alleging: 1) sex and/or pregnancy discrimination in violation of Title VII of the Civil Rights Act of 1964, the Pennsylvania Human Relations Act ("PHRA"), and the Philadelphia Fair Practices Ordinance ("PFPO"); 2) disability discrimination in violation of the Americans with Disabilities Act ("ADA"), the PHRA, and the PFPO; and 3) interference in violation of the Family and Medical Leave Act ("FMLA"). St. Ignatius has moved for summary judgment, and the motion is ripe.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) permits a party to seek, and a court to enter, summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he plain language of Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quotations omitted). In ruling on a summary judgment motion,

a court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (quotation omitted). However, "[t]he non-moving party may not merely deny the allegations in the moving party's pleadings; instead he must show where in the record there exists a genuine dispute over a material fact." *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007) (citation omitted); *see also* Fed. R. Civ. P. 56(c)(1)(A)-(B).

### III.  DISCUSSION

#### A.  FMLA

Ms. Gedeus contends that St. Ignatius interfered with her FMLA rights by terminating her before she was eligible to take FMLA leave. "Unlike an FMLA retaliation claim, '[a]n interference action is not about discrimination, it is only about whether the employer provided the employee with the entitlements guaranteed by the FMLA.'" *Capps v. Mondelez Glob., LLC*, 847 F.3d 144, 155 (3d Cir. 2017) (quote omitted). To prevail on her claim of FMLA interference, Ms. Gedeus must prove that: 1) she was an eligible employee under the FMLA; 2) St. Ignatius was subject to the FMLA's requirements; 3) she was entitled to FMLA leave; 4) she gave notice to St. Ignatius of her intention to take FMLA leave; and 5) St. Ignatius denied her benefits to which she was entitled under the FMLA. *See id.* at 155. While Ms. Gedeus need not prove that St. Ignatius acted with "discriminatory intent" to establish an interference claim, the FMLA "does not provide her with a right against

termination for a reason other than interference with rights under the FMLA." *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 312 (3d Cir. 2012) (quote omitted).

When St. Ignatius decided to terminate Ms. Gedeus, she had not requested FMLA leave. The undisputed evidence shows that St. Ignatius decided to terminate Ms. Gedeus on October 31, 2019, when it offered Ms. May a full-time position. At that time, neither Ms. Gedeus, nor her mother, had not mentioned FMLA in discussions with Mr. Weirich or anyone else from St. Ignatius. Because Ms. Gedeus had not, at that point, requested FMLA leave, she cannot prevail on the fourth element of an FMLA interference claim.

In addition, because Ms. Gedeus did not, at the time of her termination, qualify for FMLA leave, St. Ignatius's termination decision did not deprive Ms. Gedeus of benefits to which she was entitled. St. Ignatius terminated Ms. Gedeus in no small part because it needed someone to begin working in November 2019, before Ms. Gedeus was eligible for FMLA leave. Because she was not yet eligible, St. Ignatius's decision to replace her with Ms. May did not deprive her of rights that the statute gave her.

Ms. Gedeus argues that St. Ignatius interfered with her right to take FMLA leave after she became eligible. She is correct that "a pre-eligible employee has a cause of action if an employer terminates her in order to avoid having to accommodate that employee with rightful FMLA leave rights once that employee becomes eligible." *Pereda v. Brookdale Senior Living Communities, Inc.*, 666 F.3d 1269, 1275 (11th Cir. 2012); *see also O'Brien v. Lehigh Valley Health Network, Inc.*, No. 18-cv-3119, 2019 WL 2642000 (E.D. Pa. June 27,

7

2019). But the timing of St. Ignatius's decision—before Ms. Gedeus asked about FMLA leave—demonstrates that St. Ignatius did not terminate her "in order to avoid" giving her FMLA leave. *Pereda*, 666 F.3d at 1275. To the contrary, the undisputed evidence shows that St. Ignatius hired Ms. Gedeus to alleviate an immediate concern and provide relief to Mr. Stewart, who couldn't do all the work himself. In short, the undisputed evidence show that St. Ignatius terminated Ms. Gedeus "for reasons 'unrelated to' her exercise of rights." *Lichtenstein*, 691 F.3d at 312; *see also Spring v. Sealed Air Corp.*, 483 F. App'x 765, 769 (3d Cir. 2012).

### B. ADA

In her Complaint, Ms. Gedeus appears to assert violations of the ADA based on disparate treatment and a failure to accommodate. Because St. Ignatius only address the failure-to-accommodate theory in its motion, the Court confines its analysis to that particular theory of liability. "A plaintiff bringing an ADA failure-to-accommodate claim must establish: '(1) [she] was disabled and [her] employer knew it; (2) [she] requested an accommodation or assistance; (3) [her] employer did not make a good faith effort to assist; and (4) [she] could have been reasonably accommodated." *Capps*, 847 F.3d at 157 (quotation omitted). In addition, she must prove that she is otherwise qualified for the position. *See Fowler v. AT&T, Inc.*, 19 F.4th 292, 307 (3d Cir. 2021) (quotation omitted). A plaintiff is qualified for the position if she can perform the essential functions of the job with or without a reasonable accommodation. *Id.* at 303 (same). "[I]f an accommodation

is needed, the plaintiff must show, as part of her burden of persuasion, that an effective accommodation that would render her otherwise qualified exists." *Id.* at 307 (same). Ms. Gedeus has evidence that, taken in the light most favorable to her, establishes each of these elements.

*First*, Ms. Gedeus's cancer and pregnancy constitute disabilities. St. Ignatius does not argue otherwise.

*Second*, Ms. Gedeus requested an accommodation when she broached the idea of working from home part time with Ms. Killian-Smith. St. Ignatius argues that this was not a formal request for an accommodation, but it doesn't matter whether this conversation was brief, informal, or a single occurrence. "Indeed, '[t]he law does not require any formal mechanism or 'magic words' to notify an employer that an employee needs an accommodation ...." *Colwell v. Rite Aid Corp.*, 602 F.3d 495, 506-07 (3d Cir. 2010) (quotation omitted). Instead, "[t]he employer must have enough information to know of 'both the disability and desire for an accommodation,' or circumstances must at least be sufficient to cause a reasonable employer to make appropriate inquiries about the possible need for an accommodation." *Id.* at 506 (same). Ms. Gedeus renewed that request for an accommodation on November 5, 2019, in her e-mail to Mr. Weirich.

*Third*, St. Ignatius did not follow-up with Ms. Gedeus to explore the possibility of her working from home some number of days per week, which is evidence that it did not make a good faith effort to assist Ms. Gedeus.

9

*Fourth*, and finally, Ms. Gedeus's accommodation request was reasonable. Ms. Gedeus testified that she could do the job working from home part time, she had already been fulfilling some job responsibilities from home on nights and weekends, and her work from the hospital, and Ms. Killian-Smith did not reject the idea of work-from-home out of hand when Ms. Gedeus first raised it. While St. Ignatius has offered some evidence that having a DSS like Ms. Gedeus work remotely sometime could cause delays, it has not shown that those delays created an unreasonable burden on its operations.

St. Ignatius also contends that Ms. Gedeus was not qualified for her job. It bases that argument on the fact that Ms. Gedeus has received Social Security Disability Insurance (SSDI) since January 2020 and has not worked since her termination to establish that she is not qualified. But the "determination of whether an individual with a disability is qualified is made **at the time of the employment decision** …." *Fowler*, 19 F.4th at 306 (quotation omitted) (emphasis added); *see also Basden v. Pro. Transp., Inc.*, 714 F.3d 1034, 1037 (7th Cir. 2013) ("[An employee's] ability to come to work, or to otherwise perform the essential functions of her job, is examined as of the time of the adverse employment decision at issue."). Thus, the fact that Ms. Gedeus started receiving disability payments at some point January 2020 has no bearing on whether she could have performed her job with a reasonable accommodation as of November 11, 2019, her termination date. The same is true of her failure to return to the labor market.

**C.      Remaining Claims**

The resolution of Ms. Gedeus's FMLA claim on summary judgment does not dispose of her remaining claims arising under Title VII, the PHRA, and the PFPO. Those claims concern St. Ignatius's alleged discrimination of Ms. Gedeus based upon her sex, pregnancy, and/or disability—not whether she was entitled to FMLA benefits. St. Ignatius did not move for summary judgment on any of Ms. Gedeus's claims based on sex or pregnancy discrimination, nor did it move on her ADA disparate treatment claim. In addition, because the Court has determined that Ms. Gedeus's ADA claim must go to a jury, the same is true for her PHRA and PFPO claims that are based on disability discrimination as well. *See Berardelli v. Allied Servs. Inst. of Rehab. Med.*, 900 F.3d 104, 126 (3d Cir. 2018) ("[T]he liability standard for the PHRA and the ADA is the same[.]"); *Coleman v. Caritas*, No. 16-cv-3652, 2017 WL 2423794, at *3 n.1 (E.D. Pa. June 2, 2017) ("Claims arising under the ADA and the PFPO are analyzed under the same legal framework.").

Finally, in light of the factual disputes as to Ms. Gedeus's disability claims and the fact that St. Ignatius did not move for summary judgment on her Title VII claims, "it would be premature to decide, as a matter of law, the issue of punitive damages." *Slayton v. Sneaker Villa, Inc.*, No. 15-cv-74, 2017 WL 1048360, at *14 (E.D. Pa. Mar. 20, 2017). Instead, a jury must determine whether St. Ignatius "engaged in a discriminatory practice … with malice or with reckless indifference." *Id.*

**IV.    CONCLUSION**

Ms. Gedeus cannot prevail on her FMLA interference claim because the record is clear that St. Ignatius terminated her for reasons unrelated to her potential need for FMLA leave once she was eligible. However, Ms. Gedeus has presented enough evidence sufficient to create genuine disputes of fact concerning her ADA claim. As a result, the Court will grant in part and deny in part St. Ignatius's Motion for Summary Judgment. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.

Date:  August 25, 2022